**BEFORE THE JUDICIAL PANEL ON**
**MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: COOK IVC FILTERS | : |
| PRODUCT LIABILITY LITIGATION | :  MDL DOCKET NO. 2570 |
| | : |
| | : |
| | : |

**Teresa C. Toriseva, Esquire**
TORISEVA LAW
1446 National Road
Wheeling, WV  26003
(304) 238-0066 (phone)
(304) 238-0149 (fax)
ceo@torisevalaw.com

**Ramon Rossi Lopez, Esquire**
LOPEZ McHUGH, LLP
100 Bayview Circle
North Tower, Suite 5600
Newport Beach, California  92660
(949) 737-1501 (phone)
(949) 737-1504 (fax)
rlopez@lopezmchugh.com

**Joseph R. Johnson, Esquire**
BABBIT, JOHNSON, OSBORNE, &
LE CLAINCHE, P.A.
1641 Worthington Road, Suite 100
West Palm Beach, Florida  33409
(561) 684-2500 (phone)
(561) 684-6308 (fax)
jjohnson@babbit-johnson.com

**Ben C. Martin, Esquire**
LAW OFFICE OF BEN C. MARTIN
3219 McKinney Ave., Ste. 100
Dallas, Texas  75204
(214) 761-6614 (phone)
(214) 744-7590 (fax)
bmartin@bencmartin.com

**John A. Dalimonte, Esquire**
KARON & DALIMONTE, LLP
85 Devonshire St., Ste. 1000
Boston, MA  02109
(617) 367-3311 (phone)
(617) 742-9130 (fax)
johndalimonte@kdlaw.net

**Troy Alexander Brenes, Esquire**
LOPEZ McHUGH, LLP
100 Bayview Circle
North Tower, Suite 5600
Newport Beach, California  92660
(949) 737-1501 (phone)
(949) 737-1504 (fax)
tbrenes@lopezmchugh.com

**Julia Reed Zaic, Esquire**
HEAVISIDE REED ZAIC,
A LAW CORPORATION
312 Broadway Street, Suite 203
Laguna Beach, California  92651
(949) 715-5120 (phone)
(949) 715-5123 (fax)
julia@hrzlaw.com

**Russell T. Button, Esquire, Esquire**
LAW OFFICE OF BEN C. MARTIN
3219 McKinney Ave., Ste. 100
Dallas, Texas  75204
(214) 761-6614 (phone)
(214) 744-7590 (fax)
rbutton@bencmartin.com

**Thomas Wm. Arbon, Esquire**
LAW OFFICE OF BEN C. MARTIN
3219 McKinney Ave., Ste. 100
Dallas, Texas  75204
(214) 761-6614 (phone)
(214) 744-7590 (fax)
bmartin@bencmartin.com

**Michael W. Heaviside**
910 17th Street, NW
Ste 800
Washington, DC 20006
(202) 223-1993
mheaviside@hrzlaw.com

**Laura E. Smith**
312 Broadway Street, Suite 203
Laguna Beach, California 92651
(949)715-5120
(949)715-5123 fax
laura@hrzlaw.com

## PLAINTIFFS' REPLY TO COOK DEFENDANTS' RESPONSE TO MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. §1407

**COMES NOW** the Plaintiffs, by counsel, and submit their Reply to the Defendants, Cook Incorporated ("CMI") (which is alleged in some cases to be also known as Cook  Medical, Inc.), Cook Incorporated d/b/a Cook Medical ("Cook"), Cook Group Incorporated ApS ("WCE") (collectively "Cook" or "Cook Defendants"), Response to the Plaintiffs' Motion for Transfer and Coordination or Consolidation to the Southern District of Indiana pursuant to 28.U.S.C. § 1407.

### I.      Introduction

Plaintiffs in 30 (now) actions in 12 (now) jurisdictions across the country seek centralization of cases involving allegations of product defect and failure to warn, generally against Cook Medical Inc. for its medical devices commonly known as IVC filters.   Centralization is necessary under Section 1407 in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary.   All of the Cook Defendants' arguments have been

previously rejected by this Panel in other similar medical device and pharmaceutical cases, and even in a case involving the Cook Defendants' opposition to another MDL created by this Panel regarding its Pelvic Repair System. *In re: Cook Medical Inc., Pelvic Repair System Products Liability Litigation*, 949 F.Supp. 2d 1373 (J.P.M.L. 2013).

## II.    The Existence of Multiple Models of Cook IVC Filters, or of Multiple Failure Types of Those IVC Filters, Does not Justify Denial of a Motion for Consolidation Under Section 1407 and the Cook Defendants' Argument on this Point is Contrary to Every Order the Panel has Ever Entered in a Drug or Medical Device Litigation

In finding consolidation appropriate under Section 1407 in another medical device MDL that involved various models of heart devices, this panel held that "[t]hese actions share allegations that certain Medtronic implantable defibrillator devices, known as implantable cardioverter defibrillators and cardiac resynchronization therapy defibrillators, were defective and caused injury, or the threat of injury, to the plaintiffs...." *See: In Re Medtronic, Inc., Implantable Defibrillators Prods. Liab. Litig.*, 408 F. Supp. 2d 1351, 1352 (J.P.M.L. 2005). As here, there were multiple devices that were all similar in their performance and medical function. Here, the IVC filters were all manufactured by Cook Defendants and all served the same medical function, to wit: "to address recurrent PE [pulmonary embolism] in a variety of circumstances." *Cook Defendant's Response to Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407* at page 3.

Similarly, and directly contrary to the Cook Defendants' arguments, this Panel has held that "[t]ransfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer." *See: In re: Gadolinium Contrast Dyes Prods. Liab. Litig.*, 536 F. Supp. 2d 1380, 1382 (J.P.M.L. 2008). In so holding, the Panel rejected the argument of the manufacturers who opposed

3

coordination by arguing that "the actions do not share sufficient questions of fact because each of the contrast agents is chemically and pharmacologically different." _Id_. at 1381.

Likewise, in _Kugel Mesh Hernia Prods Liab. Litig._, the manufacturer argued that "common facts do not predominate among the actions, as the actions involve different models of hernia patches and allege various types of defects". The Panel flatly rejected this argument and held: "We are not persuaded by these arguments. Transfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer. Transfer under Section 1407 has the salutary effect of placing all actions in this docket before a single judge who can formulate a pretrial program that: (1) allows discovery with respect to any non-common issues to proceed concurrently with discovery on common issues, _In re Joseph F. Smith Patent Litigation_, 407 F. Supp. 1403, 1404 (J.P.M.L. 1976); and (2) ensures expeditious resolution of all actions to the overall benefit of the parties." _See: In Re Kugel Mesh Hernia Patch Prods Liab. Litig.,_ 493 F. Supp. 2d 1371, 1374 (J.P.M.L. 2007).

**III.** **The Existence of Unique Facts Specific to Each Plaintiff's Claim in Products Liability Medical Device Cases Does Not and Has Not Justified Denial by This Panel of a Motion for Consolidation Under Section 1407**

The Panel has consistently rejected the argument that individualized factual issues work against centralization. The Panel has held that this argument is simply not significant in products liability matters, especially device cases. "Though the actions certainly present some individual issue, this is usually true of device cases and other products liability cases. Section 1407 does not require a complete identity or even a majority of common factual issues as a prerequisite to centralization." _In re: Zimmer Durom Hip Cup Products_

*Liability Litigation,* 717 F.Supp. 2d 1376, 1378 (J.P.M.L. 2010) (*citing Denture Cream Products Liability Litigation, 624 F. Supp. 2d 1379, 1381 (J.P.M.L. 2009).*

This Panel has even rejected this same argument by these very Defendants related to their opposition to another MDL involving another of their product lines.  In the *Cook Medical, Inc. Pelvic Repair System Products Liability Litigation*, this Panel held again that "Though these actions present some individual issues of fact, this is usually true of products liability cases and medical device cases, in particular.  *In re: Zimmer Durom Hip Cup Products Liability Litigation*, 717 F.Supp. 2d 1376, 1378 (J.P.M.L. 2010). We find the unique facts presented by individual Plaintiffs to be less significant than the fact that these actions share core issues of fact concerning the design, manufacture, testing, and marketing of Cook's pelvic repair products."  *In Re: Cook Medical, Inc., Pelvic Repair System Prods Liab. Litig.*, 949 F. Supp. 2d 1373, 1375 (J.P.M.L. 2013)

In *Zimmer*, and in *Cook Medical*, and now here, these products liability medical device cases share common issues of fact surrounding the design, manufacture, testing and marketing of Cook Medical's IVC filters. Specifically, the essence of all Plaintiffs' claims is that Defendants' IVC filters were defectively designed and the manufacturer failed to sufficiently warn of its risks.

### IV.   The Concern that an MDL will Promote the Filing of Baseless Lawsuits Against the Cook Defendants is an Argument this Panel has Already Rejected

The Cook Defendants stop just short of alleging that all cases against it are frivolous. However, Cook Medical does argue directly that an MDL will lead to the filing of spurious lawsuits against it.  It is no surprise that a medical device manufacturer would prefer not to answer in Court to real people injured by their sometimes less than

miraculous medical inventions. It is further no surprise that a profit-driven medical device company views lawsuits against it as "baseless".   Likewise, this Panel would not be surprised to learn that injured Plaintiffs view Cook Medical's defenses to be baseless, as well as their claims of low injury rates. But none of those unilateral perspectives matter much to the question of whether common issues of fact exist sufficiently to warrant consolidation under Section 1407.  Moreover, as this Panel has already held, in disposing of this misplaced and biased argument "[t]he response to such concerns more properly inheres in assigning all related actions to one judge committed to disposing of spurious claims quickly."   *In re: Seroquel Products Liab. Litig.*, 447 F. Supp. 2d 1376, 1329 (J.P.M.L. 2006).

> **V.**     **The Cook Defendants' Arguments about the Merits of the Underlying Litigation are Irrelevant to the Question of Coordination Under Section 1407, Except Insofar as the Substantive Allegations by Both Plaintiffs and Defendants Demonstrate the Overwhelming Commonalities**

Defendants' brief is replete with arguments about the merits of the underlying actions.  Such arguments are beyond the scope of the inquiry this Panel must make under Section 1407.   As such, Plaintiffs' will resist the urge to respond point by point to the claims of the Defendants with regard to their products.   With that said, however, the Cook Defendants substantive arguments regarding merits actually prove Plaintiffs' point --- that these cases involve substantial commonalities.   From the science, to the product development, to the IFUs (instructions for use), to the mechanism of blood clot prevention, to the role of the physician, and to the various mechanisms of failure, the numerous commonalities are immediately apparent when one reads Defendants' own description of its IVC filters, and the medical issues behind those products.   One small example of this point is when the Cook Defendants assert that "[t]he Celect and Gunther Tulip Filters are

intended for the prevention of recurrent pulmonary embolism via placement in the vena cava in the following situations:

- Pulmonary thromboembolism when anti-coagulant therapy is contraindicated.

- Failure of anti-coagulant therapy in thromboembolic diseases;

- Emergency treatment following massive pulmonary embolism where anticipated benefits of conventional therapy are reduced; and

- Chronic, recurrent pulmonary embolism where anti-coagulant therapy has failed or is contraindicated. The product can be permanent or retrievable."

*See: Cook Defendant's Response to Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407* at page 5.

Another example of the emergence of common issues from Defendants' arguments on the merits is Cook's statement that:

Cook Defendants' evidence will show that the Celect was not negligently designed or manufactured. Specifically, all of Cook's design, testing and development, manufacturing, marketing and post-market surveillance of the Celect and Gunther Tulip complied with ISO 13485:2003; the Federal Food Drug & Cosmetic Act, Medical Device Amendments, and regulations enacted by the FDA pursuant to those statutes, including 21 CFR Parts 801, 803, 806, and 820; Council Directive 93/32/EEC of the European Communities, The Medical Device Directive; BED no. 1263 of 15.12.2008, Ministry of Health and Prevention, Denmark; The Canadian Medical Device Regulations SOR/98-282 May 1998; The Australian Therapeutic Goods (Medical Devices) Regulations 2002, and the Australian Regulations Guidelines for Medical Devices (ARGMD); Applicable articles of the Japanese Pharmaceutical Affairs Law (MHLW Ministerial Ordinance no. 169, 2004); MEDDEV 2.7.1 – Guidelines on Medical Devices – Evaluation of Clinical Data: A Guide for Manufacturers and Notified Bodies – December 2009; Global Harmonization Task Force "Clinical Evaluation" SG5/N2R8:2007; Clinical Investigation of Medical Devices for Human Subjects – Good

Clinical Practice ISO 14155:2011; and NB-MED/2.12/REC1 plus, as appropriate, MEDDEV 2.12.2/REV6.

While Plaintiffs obviously disagree as to the validity of this statement, this very claim will need addressed in <u>every</u> claim filed.

## VI.   <u>Conclusion</u>

The subject actions share factual issues arising from allegations that defects in IVC filter products manufactured by Cook Defendants to treat recurrent pulmonary embolism caused injuries to patients implanted with these devices. The thirty (30) actions filed to date in twelve (12) different jurisdictions[1] involve common questions of fact and centralization of the Southern District of Indiana where Cook Medical is headquartered will serve convenience of the parties and witnesses and will promote the just and deficient conduct of the litigation.  *See: In Re: Cook Medical, Inc., Pelvic Repair System Prods Liab. Litig.*  Centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and judiciary. *Id.*

Respectfully Submitted,


*/s/ Teresa C. Toriseva*
Teresa C. Toriseva, Esquire
TORISEVA LAW
1446 National Road
Wheeling, WV  26003
(304) 238-0066 (phone)
(304) 238-0149 (fax)
ceo@torisevalaw.com
***Along with Counsel Listed on
Cover Page***

---

[1] Three more lawsuits have been filed since Plaintiffs' Motion for Transfer was originally filed and have been reported as potential Tag-Along actions by Notice filed this same date.

*And as Counsel on behalf of the below cases:*

*Lara L. Adams and Keith N. Adams*

*Casey C. Cadena and Felicia N. Cadena*

*Becky G. Cadle*

*Regina S. Elder and Thomas H. Elder, III*

*John Harris and Alice Harris*

*Cynthia Stockson, as Special Administratrix and Grandmother and Next of Kin on behalf of the Estate of Ronald Huffman, On behalf of Alexis Chantal Huffman, and On behalf of Corrine Corrine Huffman*

*Marlies M. Jung*

*Jacob R. Ormond*

*Ginger Renay Sumner*

*Melissa Walck*

*Marie Wells and Richard Wells*

*Donald West and Sharon West*

*Alisha Mae Wonder*

**BEFORE THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE: COOK IVC FILTERS PRODUCT LIABILITY LITIGATION** | :<br>:<br>:<br>: | **MDL DOCKET NO. 2570** |

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2014, I electronically filed the foregoing **PLAINTIFFS' REPLY TO COOK DEFENDANTS' RESPONSE TO MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION UNDER 28 U.S.C. §1407** of said Notice with the Clerk of the Panel using the CM/ECF system which will send notification of such filing to CM/ECF participates registered to receive service in this matter.

*/s/ Teresa C. Toriseva*
Teresa C. Toriseva